7 W  195
31 SC ⁴328

## Good *against* Good.

A recognizance in the orphan's court to secure the interest of a widow under the act of the 23d of March 1764, is not unlawful, and an action may be maintained upon it, either by the widow, or by her equitable assignee after her death.

A recovery in an action of debt upon a recognizance to secure the payment to several heirs under the intestate laws, by one of them, is no bar to a subsequent suit by another.

A deposition taken in an action between A and B is not admissible in an action between A and B with notice to C as terre-tenant, when it is sought to charge C's land.

Under special circumstances it may be competent to give in evidence what a witness swore on a former trial, to corroborate testimony given in the second trial.

*Quære.* If a deposition be taken in an action between A and B, and it proves inadmissible, would it be inadmissible in another action between the same parties, merely because it was not taken in the latter case?

ERROR to the district court of *Lancaster* county.

The president of the orphan's court for the use of Joseph Good against John Good with notice to Christian Good terre-tenant. Peter Good died intestate, seised of certain real estate, and, in a proceeding in the orphan's court, under the intestate laws, on the 24th of September 1792, the same was taken by John Good the defendant at the valuation, upon his entering into a recognizance for the payment of the interest of the widow and shares of the other heirs. Upon this recognizance this action of debt was brought by Joseph Good to recover the interest of the widow, from whom he held a transfer.  The defendant and the terre-tenant severally pleaded *nul tiel* record, payment and a former recovery.

To maintain the plea of *nul tiel* record, the defendants contended that the recognizance upon which the suit was brought was not authorized or directed by the act of 23d of March 1764.  That the law only directed the recognizance to be given to secure the interests of the heirs, and that there was another mode of securing and collecting the interest due to the widow by the charge upon the land and distress.

Upon the plea of a former recovery, the defendants gave in evidence the record of an action and judgment by one of the heirs to recover his share of the valuation upon the same recognizance; and therefore contended that no subsequent action of debt could be maintained thereon.

The defendants also contended, that even if the action could have been maintained by the widow herself in her lifetime, yet it could not by Joseph Good, claiming to be her assignee, and after her death.

[Good v. Good.]

The court below (Hays, President) ruled all these points against the defendants.

During the progress of the trial, the plaintiff offered in evidence the deposition of Barbara Good, which had been taken in a prior action brought by John Good against Joseph Good, for the recovery of the price of grain sold and delivered, &c. See Good v. Good, 5 *Watts* 116. In that action Joseph Good offered to set off his claim in this, against the demand of John Good, and took the deposition to establish it. But the set-off was not allowable in that action; and the court below admitted it to be read to the jury on this trial.

Barbara Butts having testified as a witness for the plaintiff on the trial, the defendant gave some evidence tending to discredit her; the plaintiff then offered to prove what she had sworn upon a former trial of the cause; this was objected to by the defendant, but the court admitted it and sealed a bill of exception.

*Champneys* and *Norris*, for plaintiffs in error.

That the action could not be maintained upon such a recognizance, cited, the act of 25 March 1764, found in 3 *Smith's Laws* 198, *sect.* 3; 2 *Penns. Rep.* 355; 1 *Watts* 259; 1 *Dall.* 265; 1 *Serg. & Rawle* 497; 5 *Serg. & Rawle* 147; 14 *Serg. & Rawle* 191; 1 *Watts* 421; 2 *Bac. Ab.* 687. That the action could not be maintained for the use of Joseph Good, cited, 13 *Serg. & Rawle* 265; 14 *Serg. & Rawle* 431; 6 *Serg. & Rawle* 44. That the former recovery in an action of debt upon the recognizance is a bar to this action, 5 *Watts* 120; 6 *Serg. & Rawle* 57; 3 *Serg. & Rawle* 204; 9 *Wend.* 287; 12 *Wend.* 504; 16 *Johns. Rep.* 136; 4 *Rawle* 273; 7 *Bac. Ab.* 23, 24, 26; 11 *Serg. & Rawle* 119; 6 *Watts* 53; 5 *Serg. & Rawle* 130. That the deposition taken in the former action should not have been received in evidence in this, because the parties are essentially different, 6 *Serg. & Rawle* 44; 7 *Serg. & Rawle* 1; 1 *Whart. Dig.* 274, *pl.* 35, 36, 37; 1 *Stark. Ev.* 198, 264; 16 *Serg. & Rawle* 379. What Barbara Butt swore in a former trial was not competent evidence, 3 *Stark. Ev.* 1758; 8 *Serg. & Rawle* 317; 7 *Serg. & Rawle* 156; 5 *Rawle* 96; 1 *Stark. Ev.* 147, 148, 149.

*Montgomery* and *Jenkins*, for defendant in error.

On the first question, cited, 2 *Bl. Com.* 341, 465; 7 *Com. Dig.* 715, *tit. Pleader, b.* 13; 2 *Watts* 200. That the former recovery is no bar, 3 *Chit. Pl.* 247; *Cro. Eliz.* 608, 817; 14 *Vin. Ab.* 609, *tit. Judgment;* Id. 637; 2 *Saun. Rep.* 71, see also note 4; 1 *Watts* 420; 1 *Penns. Prac.* 300. As to the deposition of Barbara Good, 6 *Serg. & Rawle* 45; 5 *Rawle* 91.

The opinion of the Court was delivered by

KENNEDY, J.—The two first errors and the last, that is, the thirteenth, will be considered in immediate connexion with each other, as two of them present nearly the same question, and each contains

[Good v. Good.]

a proposition, which, if true, would go to defeat the plaintiff's right below to maintain this action.

The propositions relied on by the counsel for the plaintiff in error in regard to these errors are: First, That no action can be sustained upon the recognizance for the recovery of the arrearages of interest which became payable to the widow, under the decree of the orphan's court, upon one-third of the valuation money of the real estate, decreed to the plaintiff in error, John Good ; because a recognizance to secure the payment thereof was not only unauthorised by the act of the 23d of March 1764 (3 *Smith's Laws* 159, in notes), in virtue and pursuance whereof the orphan's court decreed the estate to Good, the conusor, but because the maintenance of an action thereon would be contrary to the spirit and prohibition of the subsequent acts of assembly, and especially of the act of the 21st of March 1806, which enacts that " in all cases, where a remedy is provided, or duty enjoined, or any thing directed to be done by any act or acts of assembly of this commonwealth, the directions of said acts shall be strictly pursued, and no penalty shall be inflicted, or any thing done agreeably to the provisions of the common law in such cases, further than shall be necessary for carrying such act or acts into effect." *Purd. Dig.* (1837) 51.

Second, That a former recovery and judgment having been obtained upon the same recognizance, in an action of debt commenced and prosecuted by Barbara Butts, one of the children of the intestate, though for her own use exclusively, no subsequent action of debt can be maintained thereon for the use of any one.

Third, Admitting that this action might have been sustained by Barbara Good for her use in her lifetime, yet she being now dead, it cannot be maintained by Joseph Good for his use as her assignee.

We, however, are of opinion, that these propositions are all untenable ; and that the errors based upon them, therefore, cannot be supported.

As to the first, the words of the act of 1764, fourth section, relative thereto, are : " that where any estate in lands, &c. cannot be divided amongst the children, or widow and children of the intestate, without prejudice to or spoiling the whole, the same being so represented and made appear to the orphan's court of the county where the lands, &c. shall be, then the said court may, but not otherwise, order the whole to the eldest son, if he shall accept it, or any of the other sons successively, upon the eldest son's refusal ; or if there be no son, or all the sons refuse, then to the eldest daughter of the said intestate, and on her refusal, to any of the other daughters successively ; he or they, or some friend for him, her or them, paying to the other children of the intestate their equal and proportionable parts of the true value of such lands, &c., as upon a just appraisement thereof, pursuant to the act for settling intestate's estates aforesaid, is directed, or giving good security for the payment thereof, in some reasonable time, as the said orphan's court shall limit and appoint ;

[Good v. Good.]

and the person or persons to whom or whose use, payment or satisfaction shall be so made for their respective parts or shares of deceased's lands in manner aforesaid, shall be forever barred of all right, title or demand, of, in, to or out of the intestate's lands, &c. aforesaid. But where the wife is living, and the whole premises shall be adjudged and ordered to the heir at law or any of the other children, the wife of the person so deceased shall not be entitled to the sum at which the purpart or share of her estate, so as aforesaid ordered to the heir at law or any of the other children, shall be valued ; but the same, together with the interest thereof, shall be and remain charged, upon the premises, and the interest thereof shall be regularly and annually paid by the heir at law, or such other child, to whom the same shall be adjudged, his or her heirs or assigns, holding the said lands, to be recovered by such mother, by distress or otherwise, as rents in this province are usually recovered, to his or her said mother, during her natural life ; which the said mother shall accept and receive in lieu and full satisfaction of her dower at common law. And at the decease of the said mother, the said principal sum, so as aforesaid valued and adjudged, shall be paid by the said heir at law, or other child aforesaid, to whom the same shall be adjudged, his or her heirs or assigns, holding the premises, and shall be distributed and divided by the said court to and among the said children of her husband and their representatives, according to the direction of the act of assembly herein before mentioned, made in the fourth year of Queen Anne, allotting two shares to the eldest son, or to his representative or representatives."

Now, although it is true that the taking of a recognizance, in order to secure the payment of any portion of the valuation money of the real estate of the intestate, is not prescribed by the act, yet it is equally true that it is not expressly prohibited ; nor is there any thing contained therein which militates in the least against the court's requiring such security to be given. As to two-thirds of the valuation money, it is expressly directed by the act that it shall be either paid in hand or *secured* to be paid within some reasonable time before the court shall adjudge the land, &c. to the party wishing and otherwise entitled to take it. But because nothing is said in the act of any *security* being given for the payment of the principal of the remaining third at the widow's death, or the interest thereon, annually to her during her life, it is urged that the legislature intended that no security creating a *personal* liability for the payment of either should be given by the party or required by the court. It is certainly difficult, if not impossible, to discover any good reason why the legislature should have designed to exclude all personal liability in such case that would not have made it equally just and expedient to have done so in regard to the prior two-thirds. As to these two-thirds, nothing is said about their remaining a charge or lien upon the land, where the court shall have granted a reasonable time for the payment thereof; and yet I cannot believe that, for this reason, it would

[Good v. Good.]

be contended by any one that a recognizance, or any other security taken by the court for the payment thereof, making the same a charge upon the land till paid, was contrary to the act, and consequently void. But if the reasoning of the counsel for the plaintiff in error were to be adopted, it would seem, on principles of parity, to lead inevitably to this conclusion. To me it is plain, that the whole scope, as well as the object and design, of the act shows clearly that the legislature did not intend to restrain the court from taking the best security that could be conveniently obtained for the payment of every or any part of the money; and this seems to be evidenced, beyond all doubt, by the very clause which provides that the widow's third shall be charged upon the land; thus putting it out of the power of the court to adjudge the land to the party taking it discharged from the payment thereof; not because it was considered that it would be improper to take personal security for the payment of it, but because it was conceived that that alone might not always prove sufficient, and it was deemed necessary, therefore, to make it expressly a charge upon the land. As the time of payment depended upon the life of the widow, it was obvious, therefore, that it might be protracted even half a century or more, a space of time sufficiently long, in the common vicissitudes of human affairs, to make the best of personal security at the time of taking it, altogether worthless before the last day of payment should come round; and therefore it was that the legislature made it a charge upon the land, merely from motives of caution, so that the payment of the money, after any lapse of time, might be made perfectly secure, and not with any view to prevent the court from requiring and taking personal security in addition thereto, because it might be unpleasant to the party taking the land to become personally bound for it. We therefore consider the recognizance good in favour of the widow, as also of the children for whose benefit it was intended.

The recognizance being good, it must then be made available; which can only be effected by giving the party injured by a breach thereof, a right to sue and maintain his action upon it. And the act of 1806, referred to above, cannot be made to interfere with such right.

The second proposition, that the former recovery is a bar to the action, will now be noticed. In doing so it will be proper first to ascertain the nature of a recognizance and the degree of verity which the law attaches to it as evidence; and why it is that a former recovery, by judgment, upon any cause of action, forms a bar to a second action's being maintained precisely upon the same cause.

A recognizance is defined to be an obligation of record, which a man enters into before some court of record, or magistrate duly authorised, with condition to do some particular act; as to appear at the assizes, to keep the peace, to pay a debt, or the like. 2 *Bl. Comm.* 341. The orphan's court, before which the recognizance was taken, here being made a court of record by the act of 1713, the

[Good v. Good.]

recognizance must therefore be considered as a matter of record, and the record alone being evidence of it, it is conclusive; and when established thereby, it cannot be gainsaid. Although the same, yet certainly no more, may be predicated of a judgment; so that if the conusee of a recognizance has obtained a judgment in an action of debt upon it, and had execution awarded, he notwithstanding may proceed again in the same way upon the *instrument* itself; because, as it is said, the recognizance and judgment are both *matter of record* and of *equal degree*; and therefore one cannot be determined by the other. *3 Chitty's Civil Pl., in notis*, 248; *Cro. Eliz.* 608, 817; 1 *Roll. Abr.* 601. And when, as would seem to have been the case here, the judgment in the former recovery was had and taken, not for the amount of the recognizance, but for a much less sum, that portion, merely, which was coming to one of the children of the intestate, the non payment whereof was assigned as the only breach of the condition of the recognizance therein, there cannot be the least colour upon principles of equity, more than upon those of law, to make it a bar here, where the breach assigned is totally different, and the injury arising therefrom found, by the verdict of the jury, to have been in nowise satisfied.

Then as to the third proposition, we consider it quite untenable also. The action, it must be observed, is not in the name of Joseph Good; nor could it be sustained in either that of Barbara Good, were she living, or that of Joseph Good, as her assignee, because she is not named as the conusee in the recognizance; and it is only in the name of the conusee that an action, such as the present, can be supported. Barbara Good was merely one of the persons for whose benefit the recognizance was taken by the orphan's court in the official name of the president judge thereof. Hence the action has been very properly brought in that name for the *use of Joseph Good.* The action being entered upon the record for his use merely indicates that it is brought by him; that he claims to recover the money therein demanded, for his own use; and that, if he fails in the action, he is willing to pay and agrees to be be held responsible for the costs. The breaches, set forth in the declaration, are the non payment of the interest to the widow as it became due and payable annually, according to the condition of the recognizance; and that he the said Joseph had become entitled, in equity, to recover it, by virtue of an assignment thereof, made to him by the widow *in* her lifetime, for a valuable consideration. That the assignment, if fairly obtained, gave him a right, in equity at least, to claim and to receive this interest, cannot be questioned; which was sufficient to warrant him in bringing this action and having it entered for his use.

The third error, being the next that we come to, is the bill of exception to the opinion of the court below in admitting the deposition of Barbara Good. The objection to the admission of it is, that it was not taken under a rule of court in this cause; nor yet in any other cause, wherein the *same matter* was *in dispute* between the *same*

[Good v. Good.]

*parties* or *persons.* The words of the act under which it is said that the deposition was taken and properly received in evidence, are, "any deposition taken, or to be taken in any cause, which by the rules of law *may be read in evidence on the trial of the cause in which it is or may be taken,* shall be allowed to be read in evidence in any *subsequent cause* wherein the *same matter* shall be in dispute between the *same parties* or *persons,* their heirs, executors, administrators or *assigns;* provided, that such deposition shall be admitted in such subsequent cause, *under the same rules* and *restrictions,* as if it had been *offered* to be *read* on the *trial* of the *original cause.*" It appears that the deposition was taken in a prior action, brought by John Good alone against Joseph Good, solely for the recovery of the price of grain, &c., sold and delivered by the former to the latter, wherein Joseph Good offered to set off his claim in this action against the claim of John in his prior action, but, under the particular circumstances attending the two actions, both of which were pending in the same court at the time, it was held, upon error afterwards, by this court, that such set off could not be made. This action, however, cannot be said to be exclusively between John Good and Joseph Good, but rather between Joseph, below, as plaintiff, and John and Christian Good as defendants; and, therefore, not properly between the *same parties* or *persons,* their heirs, executors, administrators or assigns, as that wherein the deposition was taken, which seems to be requisite according to the terms of the act. It is said, however, that Christian Good is no party to the recognizance, which is certainly true; and that, at most, he can only be considered a party to this action as the assignee of John Good, and, therefore, the case still comes within the terms and provisions of the act. But it is clear that "*assigns,*" according to the true import of the act, means those persons who shall become such *after* the taking of the deposition, which was not the case here; otherwise the greatest injustice might follow, by making a man liable to be divested of his rights upon testimony taken in a suit to which he is no party, and commenced after he had become completely invested with such rights, without any opportunity whatever afforded him of a cross-examination. To admit evidence, taken under such circumstances, going to charge or affect his rights, would be contrary to every principle of law as well as natural justice; and, therefore, it cannot for a moment be supposed that the legislature intended it, seeing they have not directed in plain terms that it shall be so. Christian Good, as appears by his deed of conveyance, became assignee of part of the land only, which is all that he holds or ever claimed of it, long before the deposition, and indeed before either of the actions was instituted. We are, therefore, of opinion that the court below erred in admitting the deposition of Barbara Good. But, besides, it may be questionable, as it was not competent for Joseph Good to give the deposition in evidence in the action wherein it was taken, and thus to bring the matter in dispute here into the contest between the parties there,

VII.—S

[Good v. Good.]

and to have it tried and passed upon there, whether the deposition ought not to be considered as inadmissible on that ground also; but, as this ground was not taken by the counsel at the argument, and the deposition is held inadmissible for other reasons, no opinion is meant to be expressed upon this last ground suggested.

The remaining errors, with the exception of the seventh, ninth, tenth and eleventh bills of exception to evidence, were very properly given up, as not tenable, by the counsel for the plaintiff in error. But since we have decided that the deposition of Barbara Good ought not to have been received in evidence, the questions involved in the seventh, ninth and eleventh bills of exception cannot arise again on a subsequent trial of the cause, and therefore need not be passed on here.

Then as to the tenth bill of exception, which was taken to the opinion of the court, in permitting the testimony of Barbara Butts, as given by her on the trial of 1835, to be read in evidence, in order to corroborate and confirm her evidence as given there on the trial going on, we are inclined to think that under the special circumstances of the case the court below was right in admitting it. The counsel for the plaintiff in error had previously, for the avowed purpose of discrediting the evidence of Barbara Butts, been permitted to prove, by Frederick Pfeifer, the declarations of Joseph Good, the plaintiff in error, made by him in February 1837, that he intended to give to the *rest* (meaning his brothers and sisters, of whom Barbara Butts was one) all that he should recover beyond what was justly coming to himself. And though the better opinion seems to be, that confirmatory evidence, such as was given here, is not admissible generally, merely because the credit of the witness is impeached, by showing his general character for truth to be bad, or that he has given a different account of the matter at another time, yet it seems to be admitted by all, that special circumstances may render it admissible; as for instance, to contradict evidence tending to show that the account of the witness was a fabrication of late date induced by some occurrence at the time, when consequently it becomes material to show that the same account had been given before its ultimate effect and operation, arising from the change of circumstances, could be foreseen; 1 *Stark. Ev.* 148, 149; Craig *v.* Craig, 5 *Rawle* 97, 98; so here we think that it was not improper to show that Barbara Butts had given the same account of the matter in 1835, two years before Joseph Good declared his intention of dividing what he might recover with the witness, that she gave on the trial then, after he had declared such intention. We think it was material, because it tended in some degree perhaps to show, that the declaration made by Joseph Good, to share, in a particular event, some part of his recovery with the witness, had not influenced her to give the account of the matter she did.

Judgment reversed, and a *venire facias de novo* awarded.