IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

WESTERN DISTRICT—PITTSBURGH, 1884.

## Evans and Shearer *versus* Ross et ux.

107   231
125   114
107   231
168   451

1. A widow whose interest in her husband's land is secured by recognizance may enforce the payment of the interest due her by distress, assumpsit, and scire facias or debt on the recognizance. The latter is intended to provide a cumulative remedy.

2. Where the widow of a decedent brings an action of scire facias on the recognizance given to secure the payment of her interest in the decedent's land, the judgment should be for the amount actually due her. If the damages are assessed and judgment entered not only for that amount but for the principal of the recognizance, the latter part of the judgment may be regarded as merely cautionary and rejected as surplusage. It may be corrected by the court below or by the Supreme Court, and the error will not be held to avoid execution issued on the judgment.

3. The decree of the Orphans' Court in the partition of an intestate's estate adjudged a portion thereof to the husband of one of the heiresses in her right (he being the highest bidder), and directed him to enter into recognizance to secure the payment of the other interests. A judgment was obtained on such recognizance for default in the payment of the widow's interest, and the land was sold by the sheriff under the judgment. In an action of ejectment by the cognizor, and his wife (in her right) against the sheriff's vendee :
   *Held*, that her estate in the land was not bound by her husband's recognizance, and that she was therefore entitled to recover.

4. Those portions of the Acts of March 23d, 1764, § 4 (1 Smith's L. 262), April 19th, 1794, § 22 (3 Smith's L. 152). and March 29th, 1832. § 41 (P. L. 202), which relate to the widow's dower in partition are almost precisely alike, and a decision based upon the earlier Acts will be considered as authority in the interpretation of the later Act of 1832.

October 6th, 1884.   Before MERCUR, C. J., GORDON, PAX-
SON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Westmoreland
county :* Of October Term, 1884, No. 13.

Ejectment, by W. J. Ross and Mary C.. his wife, in her
right, against Samuel T. Evans, and Hiram Shearer, to recover
possession of an undivided seventh part of a tract of one hun-
dred and seventy-five acres of land in Allegheny township.

At the trial, before HUNTER, P. J., it was admitted that
David Evans in his lifetime owned the land in dispute, and
that he died intestate leaving a widow, Ellen Evans, still liv-
ing, and eight children, one of whom, Mary C., the wife of W. J.
Ross, was the plaintiff.   Proceedings in partition were insti-
tuted in the Orphans' Court of Westmoreland county in 1875,
under which the land was appraised in the usual manner, and
the premises in controversy were awarded to W. J. Ross in
right of his wife, Mary C. Ross.   In pursuance of the decree
of the court Ross entered into recognizance to pay the widow,
Ellen Evans, the interest during life of one third of the valu-
ation, and to pay the principal at her death to the heirs of David
Evans.   The decree of the court recited the death of Lazarus,
a son of David Evans, since his father's decease, leaving a wife
Mary, but no issue, and directed Ross to enter into recogni-
zance to pay the interest of one half of Lazarus' share to
Ellen Evans during her life, and to pay the interest of the
other half to Mary, the widow of Lazarus, during her life, and
at their respective deaths to pay said share to the heirs of
David Evans, deceased.   Ross complied with this order of the
court, and gave recognizances as directed, with Hugh Ross
and Hiram Shearer as sureties.   Default was made by Ross
in his payments to the widow, who brought an action of scire
facias upon his recognizance, and obtained judgment.   The
damages were assessed for the whole amount of the recogni-
zance, $1,529.66 plus $91.51, the amount of the interest then
due her, making the total amount $1,629.66.   Upon this judg-
ment execution for $91.51 was issued, and the 175 acres taken
by Ross in right of his wife were sold by the sheriff to Hiram
Shearer for $1,500.   Shearer, as surety for Ross, paid the
recognizances given by him, and continued the annual pay-
ments of interest to the widow.   This suit was then brought
by Ross and wife against Shearer and his tenant Evans.

The court reserved the point presented by the defendants,
" that the plaintiff is not entitled to recover in this case any
part of the land in dispute," and directed a verdict for the
plaintiff for one seventh part of the land described in the writ.

Verdict for the plaintiff for the undivided one seventh of
the premises with $6\frac{1}{4}$ cents damages and costs.   The court

subsequently entered judgment for the plaintiff on the verdict, HUNTER, P. J., filing an opinion, as follows:

" I am unable to find any authorities since the Act of 1832, justifying a sci. fa. for arrearages of the widow's annuity secured by recognizance in the Orphans' Court.  The Act of 1832 provides that the same may be recoverable by distress or otherwise, as rents are recoverable, and when a statute prescribes a remedy it should be followed.  It is true that the usual mode of enforcing recognizances is by writ of sci. fa. issued out of the Court of Common Pleas, and this remedy has for many years been the one pursued by heirs seeking to recover money due them upon proceedings in partition in the Orphans' Court.  But can this remedy be adopted by the widow whose dower, in the nature of an annuity, is thus secured, she having a lien clothed with authority to collect yearly, as a landlord has to collect his rents?  In Stewart v. Martin, 2 Watts 200, that a sci. fa. would lie, was not questioned, but in that case the recognizance was given in 1811, long before the Act under which the widow here has proceeded.  I am inclined to the opinion, therefore, that the remedy of the widow was that prescribed by the Act.  But be this as it may, the judgment was taken for the whole amount of recognizance, *principal* as well as interest.  The judgment was liquidated at $1,629.66, and this sum entered into the list of liens which secured condemnation of the land, and if defendant be right, the sale based upon such condemnation, swept away, so far as the land is concerned, the entire patrimony of the plaintiff.  It is true that execution was only taken for the interest then due the widow, namely the sum of $91.51.  But this was part of the judgment, and it was on this fi. fa. the land was sold.  In Stewart v. Martin, supra, the court would not suffer a verdict or judgment for a greater sum than the annuity due the widow.  There is a very grave doubt, therefore, if the writ upon which the sheriff sold the land, was based upon such a judgment as would sustain the sale.

" Taking up the second proposition in plaintiff's points, that although the sheriff's sale may have been valid, it did not pass the plaintiff's interest in the land, nor divest her of her title as one of the heirs of David Evans :  The land was decreed to William J. Ross in right of his wife, the present plaintiff, she, so far as the record informs us, not being present or taking any part in the proceedings in partition.  Was there then such title in the husband as would pass the wife's interest in the land by a sheriff's sale upon a judgment obtained against him?  It is well settled that when a husband takes land in proceedings in partition in right of his wife, he takes it as if

by purchase and in fee simple in the purparts of all except his wife's portion of it, in which he holds a life estate only: Snavily *v.* Wagner, 8 Barr 396; Otto's Estate, 2 P. F. S. 434; McCullough *v.* Wallace, 8 S. &. R. 181; Kean *v.* Ridgway, 16 S. & R. 60. Nor is the recognizance of the husband, in such case, a lien on his wife's interest or estate: Kean *v.* Ridgway, supra; Good *v.* Good, 7 Watts 195.

" We might multiply cases to sustain this rule, but it is not necessary. The sheriff's sale, therefore, did not divest the plaintiff of her estate in the land (the land having been sold on a judgment obtained against the husband, as we have seen), and judgment must be entered on the verdict. The defendants' point has been already answered, but we now finally answer it in the negative.

"And now February 4th, 1882, judgment on the verdict on payment of jury fee."

The defendants thereupon took this writ, assigning for error the direction of the court to the jury to find a verdict for the plaintiff for one seventh of the premises; the refusal to charge as requested by defendants, and the subsequent entry of judgment upon the verdict, in the foregoing opinion.

*H. P. Laird,* for the plaintiffs in error.

*Jac. Turney* (with whom was *Alex. Eicher*), for the defendants in error.

Mr. Justice GORDON delivered the opinion of the court, November 10th, 1884.

David Evans, of the county of Westmoreland, died intestate and seised of the land now in controversy, leaving to survive him a widow, Ellen Evans, and eight children, of whom one was Mary C., the plaintiff below, intermarried with W. J. Ross. Of this land partition was made under process regularly had in the Orphans' Court of said county, and on the bid of William J. Ross, in right of his wife, one of the purparts resulting from this partition was allotted to him. He thereupon, in pursuance of the order of the court, entered into a recognizance conditioned for the payment to the widow, Ellen Evans, annually during her life, of the interest on the one third of the valuation, and also conditioned for the payment, at her decease, of the principal sum to the heirs of the decedent. It likewise appears, from the decree of the said court, that Lazarus, one of the eight children of David Evans, died after his father without issue, and leaving a widow, Mary. Thus, at the time of the partition, his part of his father's estate had also vested in his surviving brothers and sisters, subject

[Evans v. Ross.]

to his widow's dower, and to the life estate of his mother in the one half thereof. This statutory dower and life estate were disposed of with the balance of the property by an order directing Ross to give separate recognizances in order to secure to the mother and widow payment of the interest which might, from time to time, become due to them from the said share. The next step in this history brings us to that which gives rise to the contention involved in this case. Ross made default in the payment of the widow's interest; she thereupon sued out a scire facias upon his recognizance, obtained judgment for the full amount thereof, and had her claim liquidated in the sum of $91.51, the amount of interest then due. On this judgment execution process was issued, levy was made on the estate of Ross in the premises, and it was finally sold by the sheriff to Hiram Shearer, one of the defendants. We may here say that we entertain no such doubt, as did the court below, concerning the validity of the judgment above named. It does not follow that because the widow could enforce payment of the interest falling due to her, by distress or assumpsit, that she might not also sue for the same by a scire facias, or by action of debt, on the recognizance.

We know not for what other purpose than to provide a cumulative remedy the recognizance is ordered. It is not taken for the purposes of lien, for the lien is statutory and exists without it, and for that purpose it is wholly unnecessary. In Stewart v. Martin, 2 Watts 200, the proceeding was, like that in hand, by scire facias on a recognizance given under the provisions of the Act of 1794. No exception was taken to the form of action, but only to the judgment which had been entered for the full amount of the recognizance instead of that sum which was then actually due to the widow, plaintiff. But as the jury found the sum thus due, the cautionary part of the judgment was held as surplusage, and corrected accordingly. It is, therefore, clear that a similar error in the Evans judgment could not so far vitiate it as to render the process under it void, though it was open to correction either on motion to the Common Pleas, or on a writ of error to this court. Moreover, in the case of Good v. Good, 7 Watts 195, it was held that a recognizance to secure the interest of a widow, under the Act of 1764, was valid, and that an action might be maintained upon it either by herself or her equitable assignee after her death. Now, as the Acts of 1764, 1794 and 1832 are almost precisely alike so far as concerns the provisions relative to the widow's dower in partition, we may regard the cases above cited as an authoritative disposition of any question concerning the validity of the

judgment under which Shearer acquired the right of Ross in and to the property in dispute.

But the court below also held that the recognizance given by Ross, in pursuance of the order of the Orphans' Court, to secure the widow's interest, was not a lien upon his wife's share of the estate, and that, as a consequence, her rights were not affected by the judgment against her husband, and did not pass by the sheriff's sale to Shearer. Under this ruling the jury were instructed to render a verdict for the plaintiff. We are asked to pronounce against this conclusion, and on this account to reverse the judgment. Were we, however, to comply with this request, we should be sustained neither by reason nor authority.

It may certainly be regarded as unreasonable that a husband should thus, for his own profit, be allowed to encumber his wife's separate property. Were she permitted to have a voice in the matter, or were her interests involved therein, the case might be different. But as the will of the husband is alone consulted; as the law allows him without her consent to assume her right and accept the property for his own use, it is not just that he, to subserve his own purposes, should be allowed so to charge her inheritance with his own obligations, that, through his default, she may lose it altogether. It is to no purpose to say that she had notice of the proceedings in partition, for such notice gave her no right to intervene for her own protection; her rights were vested in her husband by act of law, and she could not be heard.

Let us suppose, for the moment, that this interest of Mrs. Ross in her father's estate was bound by the recognizance of the husband; the result is that, without any consideration passing to her, and by no act of her own, Shearer has acquired the fee to her land. It is enough merely to state a doctrine of this kind to show that it cannot be sustained.

In the case of Kean *v.* Ridgway, 16 S. & R. 60, it was held by Mr. Chief Justice GIBSON that the legislature, in providing for the process of partition, had in view only those who might claim by descent from the intestate, without reference to the intervention of the husband, which, not being foreseen, was, therefore, not provided for, and that when it occurred in practice it gave rise to many difficulties. He further says that it is too plain for argument, that the recognizance of the husband does not bind her estate, and that in it he takes nothing either in her behalf nor his own. " Her right of election," he continues, "is an incident of her person and not of her estate, and he succeeds to it by marriage as he does to all her other rights that are purely personal. But what he takes in virtue of it he takes to his own use, and it would,

therefore, be contrary to the dictates of natural justice to permit him to pledge her estate for the price of what he has not purchased for her benefit." It is true that in the wife's purpart the husband may still be regarded as having a life estate as tenant by the curtesy, but as by the Act of 1850, this estate cannot be sold during the lifetime of the wife, on process against the husband; in other words, as her right of possession and enjoyment cannot thus be disturbed, it is unnecessary to dwell upon this feature of the case. We conclude, then, that this part of the controversy was well ruled in the court below.

We agree, however, with the counsel for the defendants that the verdict was for more of the land than the plaintiff is at present entitled to possess. It is true that the fee to the inheritance of Lazarus Evans passed at his death to his brothers and sisters; but, as we have already said, in the one half his mother had a life estate, and his wife her dower in the other half, and as both these interests were considered in the partition proceedings, and were assigned to Ross, it is clear that he, or rather the sheriff's vendee upon whom his rights have devolved, is entitled to the possession of the whole of this share until the death of the life tenants has vested the right to that possession in the remaindermen.

The verdict should, therefore, have been in favor of the plaintiff for the one undivided eighth of the land described in the writ instead of for one seventh.

For this reason the judgment is now reversed, and a new venire ordered.