## Commonwealth *v.* Miller, Appellant (No. 2).

*Criminal law—Bribery—School director—Receipt.*

On the trial of an indictment of a school director for receiving a bribe from a teacher, a receipt signed by the teacher and approved by the defendant as secretary of the school board may be explained by parol evidence, where it shows on its face such ambiguity as to the amount as requires explanation.

*Appeals—Failure to print testimony—Assignments of error.*

On an appeal the onus is on the appellant to make out his assignments of error affirmatively, and he must furnish in the record and on his paper-book all that is necessary for that purpose. If without fault of the appellee, evidence given on the trial, which is alleged to be essential to a correct determination of an assignment of error, is not brought up with the record, the appellant has no right to object to a disposition of the assignment upon facts recited by the judge in the ruling to which exception was taken.

*Evidence—Witness—Motives of interest—Prior statements.*

Where a witness is charged directly or inferentially with testifying under the influence of some motive prompting him to make a false statement, it may be shown that he made a similar statement when the imputed motives did not exist, or when motives of interest would have induced him to make a different statement of facts.

*Evidence—Testimony—Improper question.*

It is not sufficient as a general rule to show that an improper question either in form or substance has been put to a witness; it must appear, in order to justify a reversal, that an answer was received which tended to injure the case of the appellant.

Argued March 16, 1906.  Appeal, No. 242, Oct. T., 1905, by defendant, from judgment of Q. S. Schuylkill Co., Nov. T., 1905, No. 1,014, on verdict of guilty in case of Commonwealth v. John A. Miller.  Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.  Affirmed.

Indictment for bribery.  Before MARR, J.

At the trial when D. S. Hering was on the stand, after examination and cross-examination, the commonwealth made the following offer on re-examination:

District Attorney Berger: It appearing from the evidence, the witness having been examined in chief by the commonwealth, and upon cross-examination by the defense, that improper motives were imputed to the witness upon the stand by the imputation of counsel in his testimony in chief, that he had paid to Miller, the defendant, the sum of $15.00 for his appointment, was a fabrication of recent date, and was not made until after his application for a school by the same board, or the board of which the defendant was a member, had been refused for the term commencing with 1905, the commonwealth proposes to show by the witness upon the stand that at the time that he received the check offered in evidence or soon thereafter, for $23.00, upon the Schuylkill Trust Company, which check represented his monthly salary of $38.00 less the $15.00 which was deducted for the payment of the defendant, Miller, that he told C. A. Aukerbrand, a merchant who cashed this check, of the contract which he had with Miller, the defendant, and of the deduction by Miller, the defendant, of the sum of $15.00 out of the proceeds of his second month's salary; it also appearing from the evidence that the witness was charged by counsel, Mr. Shepherd, that he had not told anybody else about this occurrence previously to the defeat of the prosecutor, who is the father-in-law of the witness, for the office of school director at the last spring election, and the witness having stated as follows : " I did not say, I did not talk about it before," and having been asked then by counsel for. the defense whom he told, and the witness having stated that he told his wife and Aukerbrand and that he told his brother and his father and Brown, and his uncle at a time when he was still teaching under his appointment and before he had been refused

a reappointment, the commonwealth proposes to show a part of the transaction having been brought out, what the whole transaction was, and what he did tell to Aukerbrand, to his wife, to his brother, to his uncle, and to Brown, at a time when a motive for fabrication did not exist.

Mr. Schalck : The proposed inquiry and line of testimony is objected to by the defense, because there is nothing on the record in this case to warrant the assertion and claim of the commonwealth's counsel upon which this proposition or application is now based. The cross-examination of the witness does not sustain the charges or allegations of the commonwealth's counsel, the record simply showing inquiries as to the time when this witness made complaints or statements to others of the matters now alleged by him on the witness stand, and having been answered by the witness, there was no further inquiry as to any particulars, nor was there any inquiry as to any conversations had between this witness and anybody else ; no such conversation or no part of any such conversation has been inquired into by counsel for the defense ; and the mere fact of counsel having asked the witness the times when he made statements or complaints of this character does not warrant the introduction of the particular conversation which this witness may have had with other persons. If this evidence is competent for any purpose at all, it is not competent at this stage of the case ; there has been no evidence introduced by the defense as yet to warrant the admission of testimony as now proposed ; after such evidence, if any, shall have been introduced, and made a part of the case, the question may then arise, whether or not the evidence now proposed is competent at all, and then only in rebuttal of such evidence as the defendants may give on their part. The defendant's counsel have not inquired into any conversation between this witness and anybody else, and therefore it is improper to recall the witness now to give any conversation between himself and others. Under all the law and all the authorities such testimony is limited to the testimony of the witnesses to whom the consonant declaration may have been made or alleged to have been made, and then only competent as evidence in rebuttal; but there is no law, no authority, no precedent for asking this witness, the chief witness of the commonwealth, under the excuse or allegations now

made to repeat as part of his testimony in chief, or as a part of the commonwealth's testimony at this stage of the case, his statements and his declaration made to third parties in the absence of the defendant Miller; it is purely inter alios acta, and if admissible under any circumstances, it is under no circumstances a part of the commonwealth's case in chief; when it is offered at the proper time in rebuttal, it can be further discussed if there should be occasion therefor.

The Court: The witness on the stand under cross-examination, having been asked by counsel for the defense whether he told the story which he has given upon the stand to any other person besides Brown, his father-in-law, and the witness having in response to that question said that he did, and then being asked by counsel to whom he had told that story, and in reply to that question has given the names of the parties to whom he told the story; and now the counsel for the commonwealth in pursuance of those questions desires to ask the witness what it was he told the witnesses whose names he gave to counsel for the defense in response to their questions, we think the evidence is admissible and we admit it.

Defendant excepts. Bill sealed. [1, 2]

Mr. Berger: We desire to make an offer upon the record. We desire to show by the report book, which it has been shown by the testimony of the commonwealth was furnished to D. S. Hering, the teacher, and the witness upon the stand, which book contains a blank form of receipt for the teacher's monthly salary, that D. S. Hering, the teacher, did not receipt in that blank form of receipt for the salary for the month of November, 1904, but that he signed his name to the said receipt as teacher and made a notation, which notation, according to a key or system understood by the witness, indicates the amount of money which he received for that month's pay, which sum is less than his month's salary.

In this connection we desire to say that this book shows that for every other month's salary the teacher receipted in full. We propose to follow this offer by showing that every other blank receipt in that book covering the term during which Hering, the witness, was appointed, and during which he taught, is properly filled up and receipted for the full amount of the monthly salary, and we propose to follow that up by

showing that this report book was presented and produced to this board of school directors, of which the defendant was a member from time to time, and delivered into the custody of the board at the close of the term.

Mr. Schalck: This is objected to because the paper referred to, the entries referred to, do not bear out the allegation of the commonwealth's officer, and are inconsistent and in conflict with the commonwealth's own case, the commonwealth's testimony already showing from this witness that he has been paid his salary for the October month ending in the middle of November, $38.00, by the check of Mr. Kraus for that amount, $38.00 drawn to his order, received by him, the witness, and indorsed and collected by him, and, therefore, his entry in this book as to the payment, or alleged nonpayment, of his salary for the school month ending November 18, 1904, and the failure of this witness to fill up the blanks in that receipt signifies nothing, and is no evidence in this case; in connection with this the book produced does show that he did receive his pay in full for the month ending October 14, 1904, which is the month's pay that is in question here in the case now on trial, to wit: the sum of $38.00, and he receipted for it, filled it up himself, and that this is conclusive answer to the allegation of the commonwealth's counsel in their offer; as to the hieroglyphics or marks, whatever it may be, which it is alleged that this witness made at the bottom of the receipt signed by him for his pay for the month ending November 18, 1904, we object that it is unintelligible, incomprehensible, and that it is not in the power of the witness to make hieroglyphics or marks of this kind which no one can comprehend but himself and then undertake to testify to those, and give them in evidence years afterward in corroboration of what testimony he may give in court. The whole of the proposed evidence is incompetent, irrelevant and immaterial. It is further objected to that it is not proposed simply to have this witness look at an entry made by him at the time in order to refresh his recollection, but it is proposed to give in evidence, as substantive evidence to go before this court and jury, hieroglyphics which no judge, no lawyer and no juror can understand or comprehend, and which this man alone professes to be able to explain; that sort of thing is not evidence in any case.

I call the attention of the court to the check Daniel Kraus, already in evidence, dated November 26, 1904, to the order of D. S. Hering for the sum of $38.00 for the month's pay due this man ending November 14, as shown by his own record and indorsed by D. S. Hering and C. A. Aukerbrand and collected by due process in bank.

The Court : We admit the testimony.

Defendant excepts.   Bill sealed.  [3, 4, 5]

C. A. Aukerbrand, recalled.

Mr. Berger : We offer him in rebuttal to rebut the imputation cast upon the witness for the commonwealth, D. S. Hering, that his testimony in connection with the payment of the $15.00 for this school was of recent fabrication, and that he was a corrupt witness and influenced by improper motives, because of the fact that he had not been reappointed to a school, and because of the further fact of his relationship to the prosecutor in this case.

Mr. Schalck : Objected to because there is no testimony upon the record, nor anything else upon the record in this case, that would warrant the introduction of the proposed evidence by way of rebuttal as now proposed to be given ; the cross-examination of the witness, Hering, by counsel for the defense has not developed or placed upon record any evidence adverse to the witness in the direction now proposed, and there being no such evidence before this court or jury for the purpose stated, or alleged by commonwealth's counsel, it is improper and incompetent now to offer to rebut where there is nothing to rebut ; the so-called imputation, if any, referred to by the counsel for the commonwealth may, or may not, have reference to some statements or arguments of counsel which, however, are matters of frequent occurrence in the trial of all causes ; and arguments of counsel are not evidence nor are they such matters upon the record of a case as would warrant the introduction of testimony as now proposed, and alleged rebuttal of alleged imputation or innuendos or arguments ; the defendant's testimony has been free from any question of this character, and raises no such issue as is now proposed to be met by the testimony of this witness in the alleged rebuttal ; the defendant's testimony has in nowise referred to any such matters, nor has the defendant offered any contradictory or conflicting

statements or declarations of the witness, Hering, to impeach his veracity or to affect his credit so as to warrant the introduction now of the evidence here proposed as rebutting testimony. This testimony is, therefore, clearly incompetent, irrelevant and inadmissible.

Mr. Berger: The matter having been fully argued during the morning session we have nothing to offer.

Mr. Schalck argues points.

The Court: You having attacked this witness on the stand by cross-examination for the purpose of showing that he was not elected to a school during the past year, then having developed by your cross-examination whether or not he had urged Mr. Brown, the prosecutor, to bring the suit; then in your opening address to the jury counsel having boldly charged that this prosecution was brought for the purpose of revenge, it seems to us that it would come clearly within the ruling of this Brown case if we understood it correctly.

(Mr. Schalck argues question further.)

The Court: We admit the evidence.

Defendant excepts. Bill sealed. [6]

Moses Hering, sworn.

Mr. Berger: This is under the same offer, the same testimony.

Mr. Farquhar: The same offer that was made as to the previous witness, to show that he had told the same story to this witness prior to his being turned down as a teacher.

Mr. Berger: During midwinter and before any motive for fabrication or falsification existed.

Mr. Schalck: Objected to for the various reasons stated in previous objections which are considered as being again repeated.

Admitted.

Defendant excepts. Bill sealed. [7]

Jonathan Hering, sworn.

Direct examination by Mr. Berger: " Q. Where do you live? A. Down Washington Township. Q. What relation are you to D. S. Hering? A. I am his father. Q. Did D. S. Hering, your son, tell you about the transaction he had with Miller. over at Rock when he was appointed to the Conrad school? "

Mr. Schalck : It is the same offer previously made I presume?

Mr. Berger: And the same objection.

The Court: And the same ruling, and the same exception. Defendant excepts. Bill sealed. [8]

Defendant on cross-examination was asked as to certain declarations made by him to one Ferrebe.

Mr. Schalck: That is nothing that is warranted by any examination on the part of the defendant's counsel. He was not asked anything concerning any other applicants or what intercourse or what conversation he had with them or any particulars.

The Court: We admit the question and seal a bill to the defendant.

Defendant excepts. Bill sealed. [11, 12]

" Q. Did not you ask Harry Ferrebe as you were going along the road what would be in it for you if you gave him that school? A. No, I did not. Q. Did you have no such conversation with him? A. No, sir, not that way. Q. Did you ask him whether there would be a divy in it for you? A. No, sir. Q. What did you say concerning a divy or money for the appointment, to Ferrebe, if anything? A. There was not anything said about any divy. Q. What conversation did you have with him about this appointment? A. He asked me about the school; he was talking English, and I was talking German. Then I asked him, I asked him how are you in it with the rest? that ended the whole business, he said something that I did not understand. Q. Then he made some answer to that, you did not understand it? A. No, I did not. Q. Why did not you? A. I did not understand him. Q. Why did not you understand him, did not he speak loud enough? A. No, he did not. Q. He spoke too low, you did not hear him plainly, is that it? A. Yes, sir. Q. Is that all that was said between you and Harry Ferrebe concerning that school on the way to the place of meeting? A. Yes, sir. Q. Nothing said about money ? "

Defendant presented this point:

2. The testimony of disinterested witnesses of the good character of the defendant for honesty and integrity is positive and substantive testimony, and is of itself sufficient to raise a doubt as to the guilt of the defendant of the matters charged upon him in this indictment, and may alone be sufficient to

work the acquittal of the defendant in this case.  *Answer :*  Evidence of good character is substantive and positive proof in the prisoner's behalf and may give rise to a reasonable doubt, which would not otherwise exist, by making it improbable that a man of such character would commit the offense charged ; but when the jury is satisfied beyond a reasonable doubt under all the evidence that the defendant is guilty, evidence of previous good character is not to overcome the conclusion which may follow from that view of the case. [13]

Verdict of guilty, upon which judgment of sentence was passed.

*Errors assigned* were (1–8, 11, 12) rulings on evidence, quoting the bill of exceptions, (13) above instructions, quoting it.

*A. W. Schalck,* with him *R. S. Bashore* and *W. F. Shepherd,* for appellant.

*Guy E. Farquhar, John F. Whalen, C. E. Berger* and *I. A. Reed,* district attorney, for appellee.

OPINION BY RICE, P. J., June 30, 1906 :

The defendant was a school director of Washington township, and was indicted and convicted upon a charge of soliciting and receiving from Daniel S. Herring a bribe of $15.00 to influence his action upon the application of Herring for appointment as teacher.

A considerable part of the testimony adduced by the commonwealth has not been returned with the record, but it is conceded that Herring testified that the defendant demanded, and Herring promised to pay, the bribe at the adjourned meeting of the board, on June 25, 1904, at which Herring received the appointment.   His testimony as to the bribe being demanded and promised was unequivocally denied by the defendant.

The school opened in September, 1904, and on October 15, following, an order was issued for $38.00, the first month's salary, and the money was paid thereon by the treasurer to the defendant, to be delivered to Herring.   On November 24, following, two orders were issued in Herring's favor, one for $38.00, his salary for the preceding month, and one for $10.00,

his expenses in attending teachers' institute, and upon these orders the treasurer delivered to the defendant checks payable to Herring corresponding in amounts to the orders.    In December the defendant gave Herring these two checks, and his own check for $23.00.    Thus far the testimony as to the payment of Herring's salary is in harmony.    But Herring testified that these checks were all that he received, and that the difference of $15.00 was retained by the defendant in pursuance of the agreement above referred to, while the defendant testified that at the time he delivered the three checks to Herring he also paid him $15.00 in cash.

This preliminary statement of the principal questions of fact leads up to a consideration of the questions raised by the third, fourth and fifth assignments of error.    It appears that when the defendant delivered the checks to Herring, he also delivered to him what is called "the teacher's monthly report book." A page of this book was prepared and set apart for each school month, the parts of this record or report material here being the blank receipt to be filled and signed by the teacher and the blank approval of the monthly report to be signed by the secretary of the board.    The receipts of Herring for other months showed the payment of $38.00, but for the month ending November 18, 1904, the approval, signed by the defendant as secretary of the board, reads: "Approval.—Filed, examined and approved the 31 day of Dec. 1904.    J. A. Miller, Secretary."

Immediately under this is the receipt which reads:

"Received, the ................ day of ......... 190 , from the Secretary of ............ District, Order No............, of this date on the Treasurer of the District for.................... Dollars........cents, which, when paid, will be my salary in full for the time embraced in the above report.

                    X     D. S. Herring, Teacher.
                    . . ."

The question is as to the admissibility of these entries in the teacher's report book, and of Herring's explanatory testimony to the effect that the marks following the dollar mark in the receipt were a form of notation chosen by him to express the number twenty-three.    In the determination of this ques-

tion, it is to be borne in mind : first, that this receipt was for the second month of Herring's service ; second, that he testifies it was signed by him directly after the three checks above referred to had been delivered to him by the defendant in payment of his salary for the first two months ; third, that the approval signed by the defendant bears a later date.   If Herring told the truth as to the time when he signed the receipt ; to be more explicit, if the receipt in its present form was before the defendant, when he signed the approval, it is not to be treated as a mere private memorandum of Herring, which only could be referred to by him to refresh his recollection, but was itself evidence.   Taken in connection with the other entries in the book, it laid ground for argument to the jury that if the defendant had turned over to Herring his full pay for the two months, it was not likely that he would have signed the approval without objecting to or questioning the peculiar form— $ ˈˈ \\\ —in which Herring, with apparent design, had chosen to indicate the amount received.   True, he may not have been affected with notice that the marks meant twenty-three, but the jury were warranted in finding that notice was brought home to him that Herring had not receipted for $38.00, but had receipted in a form which required explanation.   His conduct in view of such notice was a relevant and significant fact ; it invited the very kind of explanation that was given.   We conclude, therefore, that the receipt was admissible in evidence, and, being so, the case presents no exception to the general rule that parol evidence is admissible to explain receipts : Sheaffer v. Sensenig, 182 Pa. 634 ; Wingate v. Mechanics Bank, 10 Pa. 104.

The question of the admissibility of the rebutting testimony embraced in the sixth, seventh and eighth assignments of error depends for its correct determination upon the testimony given by D. S. Herring when under cross-examination by the defendant's counsel.   Unfortunately, however, the latter testimony has not been returned with the record.   The reason assigned for this omission is that it was taken before the official shorthand reporter was called in, and the notes of it, which were taken by the trial judge, were not filed and have been lost or mislaid.   But this does not affect the applicability of the general rule, that " the onus is on the plaintiff in error to make

out his assignment affirmatively, and he must furnish in the record and on his paper-book all that is necessary for that purpose : " Aiken v. Stewart, 63 Pa. 30. If without fault of the appellee evidence given on the trial, which is alleged to be essential to a correct determination of an assignment of error, is not brought up with the record, the appellant, surely, has no right to object to a disposition of the assignment upon the facts recited by the judge in the ruling excepted to.

In discussing the assignment it will be well to keep in mind certain dates. The bribe was alleged to have been solicited and promised in June, 1904. Herring taught during the school year beginning in September, 1904. This prosecution was begun in October, 1905, and the case was tried in the following month. Herring, as we have seen, was the principal witness for the commonwealth. It is conceded that upon his cross-examination the facts were elicited, (1) that Brown the prosecutor, and the father-in-law of Herring, was defeated for school director in February, 1905, and blamed the defendant for his defeat; (2) that at the election of teachers in the ensuing summer Herring was dropped and lost his school. The only relevancy these facts had was to show motive for the prosecution and the witnesses' bias, and that the defendant's counsel elicited and relied upon them for that purpose is shown by the bill of exceptions. In such a direct conflict of testimony as that between Herring and the defendant as to the principal facts, evidence of this kind, whether drawn out upon the cross-examination of the witness or introduced by the opposite party, is not only relevant, but, if not rebutted nor explained, may have great weight with the jury. The testimony admitted in rebuttal was to the effect that about the time the bribe is alleged to have been paid, and before the imputed motive could have existed, the witness narrated the facts to others substantially as he narrated them upon the witness stand. The leading decisions of our Supreme Court bearing upon the question of the admissibility in evidence of such previous statements of a witness are: Henderson v. Jones, 10 S. & R. 322 ; Craig v. Craig, 5 Rawle, 91 ; Good v. Good, 7 Watts, 195 ; McKee v. Jones, 6 Pa. 425 ; Bricker v. Lightner, 40 Pa. 199 ; Zell v. Commonwealth, 94 Pa. 258 ; Hester v. Commonwealth, 85 Pa. 139 ; Clever v. Hilberry, 116 Pa. 431 ; Crooks v. Bunn,

136 Pa. 368 ; Thomas v. Miller, 165 Pa. 216. We reviewed these cases at length in Commonwealth v. Kay, 14 Pa. Superior Ct. 376, and reached the conclusion that a mere conflict of testimony is not, alone, a sufficient reason for the admission of such proof, and in the later case of Commonwealth v. Brown, 23 Pa. Superior Ct. 470, where the subject was re-examined, we added, that the general rule as to hearsay testimony ought not to be relaxed even though the conflict be such as is explainable only upon the theory that the testimony of one of the opposing witnesses is a pure fabrication. But in the latter case we said : While it is not in general permissible to support a witness " by evidence that he had made former statements similar to his testimony, yet there are well-recognized exceptions to the general rule. The authorities generally agree, that in contradiction of evidence tending to show that the witness's account of the transaction was a fabrication of recent date, it may be shown that he gave a similar account before its effect and operation could be seen, or before there could have been any inducement to fabricate ; also that where he is charged directly or inferentially with testifying under the influence of some motive prompting him to make a false statement, it may be shown that he made a similar statement when the imputed motive did not exist, or when motives of interest would have induced him to make a different statement of facts." The learned trial judge with better knowledge than we can have of the course pursued in the cross-examination of Herring, and of the use sought to be made of the facts elicited, held that the case was brought within the above-stated principles. We are not convinced that this was an erroneous conclusion ; therefore these assignments are overruled.

The testimony of Herring quoted in the first and second assignments was of the same nature, and for the reasons already stated was admissible in connection with the testimony of the witnesses to whom he narrated the facts. If there was technical error in not excluding it until the defendant had closed his case, we cannot see that it was an error which prejudiced the defendant in any way.

The eleventh and twelfth assignments of error relate to the cross-examination of the defendant in regard to an offer made

by him to one Ferrebee to give to Ferrebee for a consideration the position subsequently given to Herring. As was said by Justice WILLIAMS in Commonwealth v. Wilson, 186 Pa. 1, "upon a trial for a specific crime, the evidence should bear some relation to the question of the defendant's connection with the particular crime charged." It has not been made clear to us that the questions put to the defendant related to any matter concerning which he had testified in chief, nor is it clear that proof of such an offer as was referred to in the questions would have been admissible for any of the exceptional purposes for which proof of independent crimes is admitted. But it is not necessary to express a decided opinion upon that question because the defendant unequivocally and emphatically denied having made any such offer as was referred to. The effect of the commonwealth's failure to elicit the incriminating evidence from the defendant and to adduce any such evidence from other witnesses was quite as likely to be prejudicial to the commonwealth as otherwise. It is not sufficient, as a general rule, to show that an improper question, either in form or substance, has been put to a witness ; it must appear that an answer was received which tended to injure the case of the appellant : Commonwealth v. Craig, 19 Pa. Superior Ct. 81. We find no reversible error in either of these assignments.

The answer to the defendant's point as to the effect of " character " evidence was the same as that given to a similar point in the other case against the defendant in which we herewith file an opinion. Therefore the thirteenth assignment of error is overruled.

The ninth and tenth assignments of error do not require discussion.

All the assignments of error are overruled, the judgment is affirmed and the record is remitted to the court below with direction that the sentence be fully carried into effect.

Judge MORRISON dissents on the question raised by the first, second, sixth, seventh and eighth assignments.